UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------X   Case No.
PAOLO BEAUPLAN,

                                          Plaintiff,

            -against-

NEW COUNTRY MOTOR CAR GROUP, INC.,

                                   Defendant.
--------------------------------------------------------------------------X

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff, PAOLO BEAUPLAN ("Plaintiff' or "Beauplan"), by his attorneys, PHILLIPS & ASSOCIATES, PLLC, hereby complains of the Defendant, NEW COUNTRY MOTOR CAR GROUP, INC. ("Defendant") as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to **Title VII of the Civil Rights Act of 1964**, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the **New York State Human Rights Law**, NYS Executive Law § 296, *et seq.* ("NYSHRL"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being **discriminated and retaliated against** and subjected to **disparate treatment** by Defendants due to his **gender** and **sex**.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. §12101, 28 U.S.C. §§ 1331 and 1343.

3. This Court has supplemental jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district in that a substantial part of the events or omissions giving rise to the claims occurred within the Eastern District of New York in accordance with 28 U.S.C. § 1391(b).

## PROCEDURAL PREREQUISITES

5.    Plaintiff filed a Charge of Discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6.    Plaintiff received a Notice of Right to Sue from the EEOC on 2/17/2023, concerning his charges of discrimination.

7.    This action is being commenced within ninety (90) days of receipt of said Notice of Right to Sue.

## PARTIES

8.    Plaintiff at all relevant times herein was and is a resident of the State of New York.

9.    At all relevant times herein, Plaintiff was and is a "person" and an "employee" entitled to protection by relevant federal, state, and city laws referenced herein.

10.    Defendant is a domestic business corporation headquartered at 358 Broadway, Suite 403 Saratoga Springs, New York 12866.

11.    Defendants operate automobile dealerships New York and Connecticut.

12.    At all relevant times herein, each of the Defendant "employed" at least fifteen (15) or more employees.

13.    Therefore, Defendant is an "employer" within the meaning of the relevant statutes references herein.

14.    At all relevant times herein, Plaintiff was an employee of Defendant.

## FACTUAL ALLEGATIONS

15. Beauplan began working for Defendant in 2015 as a Sales Consultant at Defendant's Lexus dealership in Westport, Connecticut. Plaintiff remains employed by Defendant with an annual compensation of approximately $99,000.

16. Throughout Beauplan's employment with the Defendant, his performance met or exceeded Defendant's expectations.

17. In or about 2016, due to his performance as the top sales consultant, Joseph "JR" Buchbinder ("JR"), Beauplan's supervisor, discussed with him the option of a promotion to Business Finance Manager at Defendant's Audi of Greenwich store. Beauplan readily expressed his desire for the promotion.

18. However, a few weeks thereafter, Beauplan learned that Jessica Boiano ("Boiano"), who was engaged in a sexual relationship with JR, was to receive the promotion to Business Finance Manager.

19. Beauplan subsequently complained of discrimination and disparate treatment to Michael Buchbinder ("Michael"), JR's brother and Beauplan's supervisor.

20. In response, Buchbinder informed Beauplan to "sit tight" because "something would open up again."

21. Boiano was ultimately promoted to a Business Finance Manager role while Beauplan, despite his impressive performance, languished in the sales consultant role.

22. Due to Defendant's discriminatory treatment, Beauplan left Defendant's employ in late 2016.

23. Thereafter, in 2018, Michael contacted Beauplan about returning to work for Defendant at its Great Neck, New York location, which was then under construction. Beauplan agreed

3

and rejoined Defendant in 2018, working at the Westport, Connecticut location while the construction was ongoing.

24. During this time, Beauplan was informed by employees of Defendant that Michael was engaged in a romantic and sexual relationship with a co-worker, Jessica Delima ("Delima"), who was employed by Defendant as a sales consultant. Beauplan also heard that JR was likewise engaged in a sexual relationship with Delima.

25. In fact, Michael admitted to engaging in sexual conduct with Delima, who, like Boiano before her, was promoted to Business Finance Manager at Defendant's Toyota dealership in Westport, Connecticut.

26. As had been the case back in 2016, Beauplan was not promoted despite his exceptional performance on behalf of Defendant.

27. Due to the sexualized conduct by JR and Michael, Beauplan opted to remain at Defendant's Lexus dealership in Westport, Connecticut even after the completion of construction on the Great Neck, New York location.

28. However, in May 2021, because of health issues with his family members that compelled him to work closer to home, Beauplan accepted a transfer to the Great Neck dealership. In making this decision, Beauplan relied on assurances from Michael that the sexual games and encounters with female staff were no longer occurring.

29. Notwithstanding, in or around October 2021, Beauplan learned that Michael engaged in a sexual and romantic relationship with Marisa Young ("Young"), a sales consultant.

30. Beauplan noticed that Michael visited Young's desk at least ten (10) times per day, which was highly unusual and uncommon for a supervisor of Defendant to do.

4

31. Beauplan also noticed that Young and Michael routinely stayed together outside normal work hours and engaged with one another in an intimate, romantic fashion.

32. Subsequently, Michael began diverting potential sales and customers from employees of Defendant, including Beauplan, to give those potential sales and customers to Young.

33. Around this time, Young confirmed to Plaintiff that sexual conduct led to more sales leads, and correspondingly more money, as well as advancement with Defendant.

34. Thereafter, in or around November 2021, Beauplan made multiple complaints to JR and Michael, that Michael's sexual relationship was affecting his financial well-being.

35. On or about December 20, 2021, Michael commanded Beauplan to meet him a couple of miles from the Great Neck dealership at a gas station to discuss his complaints against Defendant.

36. When Beauplan met with Michael at the gas station, Michael was crying and admitted to discriminatory and retaliatory conduct against Beauplan by Defendant.

37. Michael commanded Beauplan to keep his sexual relationship with Young a secret.

38. Michael did not offer to acknowledge, remedy or otherwise investigate Beauplan's allegations of discrimination and retaliation.

39. After this conversation, Beauplan received even fewer sales calls, to the point where Beauplan went weeks without any potential clients or sales, due to the preferential treatment by Defendant of Young and exclusive sourcing of clients to Young's account.

40. Indeed, Defendants' receptionist was instructed and trained by Michael to re-route all potential sales calls to Young, rather than Beauplan, in violation of Defendant's company policies and procedures (and New York law governing discrimination and retaliation).

5

41.  Beauplan then made yet another complaint to Michael regarding the improper rerouting of sales calls to Young.

42.  In response, Michael informed Beauplan that he "would look into it," but took no action.

43.  Subsequent to his multiple internal complaints, Beauplan reached out to Kelly Schreiner of Defendant's Human Resources department to complain regarding discrimination and retaliation against him by Defendant.

44.  Thereafter, Michael demanded Beauplan quit his employment with Defendant.

45.  Michael further spoke with Beauplan's family members in an effort to convince Beauplan to quit his employment with Defendant.

46.  Michael additionally retaliated against Beauplan by indicating he was "crazy" to employees of Defendant for complaining about him and other supervisors.

47.  Michael attempted to silence Beauplan because he knew of his amoral and illegal conduct against Beauplan.

48.  Thereafter, the Human Resources department for Defendant commenced an investigation of Beauplan's allegations against Defendant.

49.  At the same time, Defendant ordered Beauplan to go on paid leave pending the results of Defendant's investigation.

50.  Nevertheless, to date, Defendant failed to correct or address any of the discriminatory and retaliatory conduct described herein against Plaintiff.

51.  On October 4, 2022, Defendant sent Plaintiff a letter claiming that it was taking "appropriate action" in response to Plaintiff's complaint. However, in that very same letter,

Defendant terminated Plaintiff's employment, in direct retaliation for his complaints of discrimination and retaliation.

52. As a direct result of the wrongful and oppressive actions of Defendant and its staff, Beauplan was subjected to unlawful discrimination, humiliated and experienced a hostile work environment causing him embarrassment, discriminatory ridicule, and hostility, in addition to increased anxiety and mental and emotional trauma.

53. As a result of the Defendant's actions, Beauplan was unlawfully treated, humiliated, degraded, victimized, embarrassed, and emotionally distressed.

54. As a result of the acts and conduct complained of herein, Beauplan has suffered a loss of income, the loss of salary/pay, special damages, loss of employment, loss of employment opportunities, loss to benefits and other compensation which such employment entails.

55. Beauplan has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

56. As a result of the acts and conduct complained of herein, Beauplan has suffered and will continue to suffer emotional pain, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Beauplan has further experienced severe emotional and physical distress.

57. Defendant's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.  As such, Beauplan demands Punitive Damages as against Defendant.

**FIRST CAUSE OF ACTION**
**<u>FOR DISCRIMINATION UNDER TITLE VII</u>**

58. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

59.     42 U.S.C. § 2000e-2(a)(1), states in part:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

60.     As described herein, Defendant discriminated against Plaintiff on the basis of his sex, in violation of Title VII, by subjecting him to disparate treatment and creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a work environment which was filled with discriminatory and retaliatory conduct against him.

61.     As a result of the unlawful discriminatory conduct of the Defendant in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

62.     The unlawful discriminatory actions of Defendant constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

**SECOND CAUSE OF ACTION**
**FOR RETALITION UNDER TITLE VII**

63.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

64.     42 U.S.C. § 2000e-3(a) provides that it shall be unlawful employment practice for an employer:

8

> [T]o . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

65.  As described herein, Plaintiff engaged in protected activities, including but not limited to, making internal complaints regarding discrimination and retaliation to Defendant's staff.

66.  As described herein, after Plaintiff engaged in activities protected by Title VII, the Defendant took adverse actions against Plaintiff which would cause a reasonable employee from making or supporting a similar complaint of discrimination.

67.  Following Plaintiff's complaints, Plaintiff was subjected to an increasingly worse hostile environment permeated with discriminatory ridicule, disparate treatment, sexual harassment, unwarranted comments, insults, adverse employment actions, and other retaliatory behavior.

68.  As a result of Defendant's retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

69.  Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of Title VII, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

**THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER THE NYSHRL**

70. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

71. Executive Law § 296(1)(a) provides that:

> It shall be an unlawful discriminatory practice: For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

72. As described herein, Defendant discriminated against Plaintiff on the basis of his gender, in violation of NYSHRL, by subjecting him to disparate treatment and creating, fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a work environment which was filled with discriminatory and retaliatory conduct against him.

73. As a result of Defendant's unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which he is entitled to an award of monetary damages and other relief.

74. As a result of Defendant's unlawful discriminatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

75. Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to the maximum allowable

damages under this statute and an award of punitive damages.

## FOURTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE NYSHRL

76.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

77.    Executive Law § 296 provides that:

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has filed a complaint, testified, or assisted in any proceeding under this article.

78.    As described herein, Plaintiff engaged in protected activities, including but not limited to, voicing, drafting and filing internal complaints regarding discrimination.

79.    As described herein, after Plaintiff engaged in activities protected by the NYSHRL, Defendant took adverse employment actions against Plaintiff that would dissuade a reasonable employee from making or supporting a similar complaint of discrimination.

80.    As a result of Defendant's retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer pecuniary losses, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages, as well as past and future lost wages and benefits and other compensatory damages, and other relief.

81.    Defendant's unlawful retaliatory actions constitute malicious, willful, and wanton violations of the NYSHRL, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

11

## JURY DEMAND

82.     Plaintiff hereby demands a jury trial.

   **WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendant:

A.      Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII and the New York State Human Rights Law, in that Defendants discriminated against Plaintiff on the basis of his sex and gender, and subjected him to a hostile work environment permeated with disparate treatment and retaliatory conduct against him;

B.      Awarding damages to Plaintiff resulting from Defendant's unlawful practices, and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices, including but not limited to, loss of benefits;

C.      Awarding Plaintiff compensatory damages related to injuries suffered as per Plaintiff's federal and state-law claims;

D.      Awarding Plaintiff compensatory damages for mental, emotional and physical injuries, distress, pain and suffering and injuries to his reputation in an amount to be proven;

E.      Awarding Plaintiff punitive damages;

F.      Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

G.      Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.


Dated: Garden City, New York
       May 18, 2023

                                        **PHILLIPS & ASSOCIATES,**

12

**ATTORNEYS AT LAW, PLLC**

_____/s/_____
Joseph Myers
585 Stewart Avenue, Suite 410
Garden City, New York 11530
T: (212) 248-7431
F: (212) 901-2107
jmyers@tpglaws.com

13